1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -   X

UNITED STATES OF AMERICA,      :      21-CR-108(DG)
                                      23-CR-50(DG)

        -against-            :      United States Courthouse
                                    Brooklyn, New York

JOSEPH MODILE,                 :
                                    March 8, 2024
         Defendant.          :      10:00 o'clock a.m.

- - - - - - - - - - - -   X

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Government:          BREON PEACE
                             United States Attorney
                             BY: DAVID PITLUCK
                             Assistant United States Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York


For the Defendant:           SAMUEL GREGORY, ESQ.
                             225 Broadway, Suite 1203
                             New York, New York  10007


Court Reporter:              Charleane M. Heading
                             225 Cadman Plaza East
                             Brooklyn, New York
                             (718) 613-2643


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2

1          THE CLERK:  This is the United States of America

2    versus Joseph Modile.

3          Is the government ready?

4          MR. PITLUCK:  Yes, sir.

5          THE CLERK:  Please state your appearance.

6          MR. PITLUCK:  Good morning, Your Honor.  For the

7    United States, David Pitluck on behalf of the government.

8    With me at counsel table is United States Probation Officer

9    Maxine Marquez and in the audience is the HSI Task Force

10   Officer and the case agent.

11         THE COURT:  Good afternoon to all of you.

12         THE CLERK:  Is the defendant ready?

13         MR. GREGORY:  Sam Gregory for Mr. Modile.  At

14   counsel table with me is Mr. Hernandez and, obviously,

15   Mr. Modile is here in the middle.

16         THE COURT:  Good morning to all three of you.

17         Everyone may be seated.

18         We are here today for imposition of sentence on two

19   different cases.

20         Is there any reason that we should not proceed,

21   Mr. Pitluck?

22         MR. PITLUCK:  Not from the government, Your Honor.

23         THE COURT:  Mr. Gregory?

24         MR. GREGORY:  No.

25         THE COURT:  On February 27th of 2023, defendant --

3

1    is it "Mo-dial," Mr. Gregory?

2            MR. GREGORY:  I call him "Mo-deel" and he's never

3    corrected me.

4            THE COURT:  Why don't we ask him.  I'd like to know

5    the correct pronunciation of his name.

6            THE DEFENDANT:  "Mo-deel."

7            THE COURT:  "Mo-deel"?  Thank you.

8            On February 27, 2023, Defendant Modile pled guilty

9    before Magistrate Judge, then Magistrate Judge Reyes to

10   Counts One and Three of Indictment 21-CR-108, which the

11   parties refer to as the "EDNY Indictment" and which I'll just

12   refer to as the "Indictment."

13           Count One of the Indictment charged Defendant Modile

14   with conspiracy to commit wire and bank fraud in violation of

15   Title 18, United States Code, Section 1349, and Count Three of

16   the Indictment charged Defendant Modile with aggravated

17   identity theft in violation of Title 18, United States Code,

18   Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), and 2.

19           In the same proceeding on February 27th of 2023,

20   Defendant Modile also pled guilty to Counts One and Two of

21   Information 23-CR-50, which the parties refer to as the

22   "Southern District of Texas Information" and which I will

23   refer to as the "Information."  That was originally, of

24   course, charged in Texas and it was transferred here and

25   assigned a new case number up here.

4

1          Count One of the Information charged
2    Defendant Modile with money laundering of wire fraud proceeds
3    in violation of Title 18, United States Code, Sections
4    1956(a)(1)(B)(1) and Section 2, and Count Two of the
5    Information charged Defendant Modile with wire fraud in
6    violation of Title 18, United States Code, Section 1343.
7          Give me one moment, please.
8          (Pause.)
9          THE COURT:  Have I properly stated, Mr. Pitluck and
10   Mr. Gregory, the statutory provisions?
11         MR. PITLUCK:  Yes, Your Honor.
12         MR. GREGORY:  Yes.
13         THE COURT:  Okay.  The pleas to the Indictment
14   counts and Information counts were pursuant to a plea
15   agreement with the government.  On May 2, 2023, Judge Reyes
16   held a continued plea hearing.  By order dated May 11th of
17   2023, I accepted the plea of guilty of Defendant Modile to
18   Counts One and Three of the Indictment and Counts One and Two
19   of the Information.
20         In preparation for today's sentencing, I have
21   received and reviewed the following items.
22         Bear with me because some of the documents were
23   filed on one or the other or both dockets.  I am going to go
24   through carefully what was filed and so I am going to ask you
25   to pay careful attention to make sure that I have everything

5

1    listed.

2         So I have received and reviewed the following items:

3    The presentence investigation report, also called the PSR,

4    prepared by the Probation Department dated September 12, 2023,

5    which is ECF Number 43 filed under docket number 21-CR-108 and

6    ECF Number 16 filed under docket number 23-CR-50, and the

7    Probation Department's sentence recommendation also dated

8    September 12, 2023, which is ECF Number 43-1 filed under

9    docket number 21-CR-108 and ECF Number 16-1 filed under docket

10   number 23-CR-50.

11        I have received and reviewed the addendum to the PSR

12   dated February 6, 2024, which is ECF Number 52 filed under

13   docket number 21-CR-108, and ECF Number 24 filed under docket

14   number 23-CR-50, and the Probation Department's revised

15   sentence recommendation also dated February 6, 2024, which is

16   ECF Number 52-1 filed under docket number 21-CR-108 and ECF

17   number 24-1 filed under docket number 23-CR-50.

18        The addendum revised the guidelines calculation in

19   the PSR to account for a two-level enhancement pursuant to

20   sentencing guideline Section 2B1.1(b)(11)(C)(i), and also

21   corrected the criminal history calculation in the PSR to

22   reflect that the defendant was not on supervised release at

23   the time he committed the conspiracy charged in the

24   Indictment.  The addendum also addressed some other objections

25   by defendant.

6

1          I have received and reviewed defendant's sentencing

2   memorandum which was filed on December 28, 2023 as ECF

3   Number 47 under docket number 21-CR-108 and filed on

4   January 8, 2024 as ECF Number 18 under docket number 23-CR-50.

5          I have received and reviewed defendant's letter

6   filed on January 8, 2024 which is ECF Number 19 under docket

7   number 23-CR-50.  That letter was not filed on docket number

8   21-CR-108.

9          Let me just note that I have considered all of the

10  filings whether they were filed on one or both dockets as I

11  think is appropriate.  I don't think the parties intended to

12  have me only consider certain filings on certain dockets but

13  let me confirm that.

14          Mr. Pitluck?

15          MR. PITLUCK:  That's correct, Judge.

16          THE COURT:  Mr. Gregory?

17          MR. GREGORY:  That's correct.  I should have done it

18  on both dockets.  You only reminded me two or three times so I

19  apologize.

20          THE COURT:  Thank you.

21          There were also some scheduling related letters that

22  I'm not going to specifically mention, I have obviously

23  considered those too, but there were requests for adjournments

24  so the parties can continue to have discussions with each

25  other.  So everything that was filed, I have considered, so

7

1   let me continue on the materials.

2           I have received and reviewed defendant's letter

3   filed on January 26, 2024 which is ECF number 49 under docket

4   number 21-CR-108, and ECF number 22 under docket number

5   23-CR-50.

6           I have received and reviewed defendant's

7   supplemental documents filed on February 25, 2024, which is

8   ECF number 54 under docket number 21-CR-108 and ECF number 25

9   under docket number 23-CR-50.

10          Defendant seeks a sentence of 54 months of

11  imprisonment.

12          Let me ask you and, obviously, we'll have a greater

13  discussion and I'll hear from you further, but, Mr. Gregory,

14  is your request accounting for the 24 months' mandatory

15  consecutive that is required under one of the Indictment

16  counts?

17          MR. GREGORY:  It is, Judge.

18          THE COURT:  Okay.  I have received and reviewed the

19  government's sentencing letter dated February 2, 2024, which

20  is ECF number 51 under docket number 21-CR-108 and ECF

21  number 23 under docket number 23-CR-50.

22          The government says that it is seeking a sentence of

23  120 months of imprisonment.

24          Again, let me ask you the same question.  It wasn't

25  clear to me from your filing whether you mean 120 months plus

8

1    24 for the mandatory consecutive?

2          MR. PITLUCK:  One hundred twenty months all in,

3    Judge, total.  I'm sorry for not making that clear.

4          THE COURT:  Okay.  And how do you arrive at that?

5    What's the specific recommendation with respect to each of the

6    counts, the specific request?

7          MR. PITLUCK:  Your Honor, obviously, the 24 months

8    mandatory for the aggravated identity theft and, to be honest,

9    Judge, I didn't specifically parse out between the text in the

10   Indictment and the Information.  We looked at the totality of

11   the conduct, I discussed it with my colleague in Texas, and we

12   compared it to the co-defendant and some other cases we had,

13   and arrived at that which we thought was an all-in sentence

14   that accurately reflected the defendant's conduct that was

15   sufficient, but not greater than necessary, under 3553(a).

16         THE COURT:  Okay.  So you're essentially asking for

17   a below guidelines sentence, is that correct?

18         MR. PITLUCK:  Slightly below, yes, Judge.

19         THE COURT:  Because even 120 would be below the

20   121 months for certain counts.

21         MR. PITLUCK:  Yes.  I think, Judge, under the

22   guidelines, it's 145 months guidelines totaling the two.

23         THE COURT:  Thank you.  That's helpful to have that

24   clarification.

25         Is there anything else that I should have received

9

1    that I have not mentioned, Mr. Pitluck?

2            MR. PITLUCK:  Nothing from the government, Judge.

3            THE COURT:  Mr. Gregory?

4            MR. GREGORY:  No, Judge.

5            THE COURT:  And regardless of whether I should have

6    already received something, is there anything that the parties

7    want me to have now?

8            Mr. Pitluck?

9            MR. PITLUCK:  No, Judge.

10           THE COURT:  Mr. Gregory?

11           MR. GREGORY:  No, Judge.  Just one thing.  When I do

12   my address, Mr. Hernandez, my paralegal, may ask to speak

13   briefly to the Court.

14           THE COURT:  I think that's fine.  He's operating

15   under your supervision, is that right?

16           MR. GREGORY:  Yes, I hope so.  Yes, Judge.

17           THE COURT:  Okay.

18           MR. GREGORY:  Thank you.

19           THE COURT:  So have the parties received the

20   materials I've mentioned:  The PSR, the Probation Department's

21   sentence recommendation, the addendum, the Probation

22   Department's revised sentence recommendation and the various

23   submissions?

24           Mr. Pitluck?

25           MR. PITLUCK:  Yes, Your Honor.

10

1          THE COURT:  Mr. Gregory?

2          MR. GREGORY:  Yes, I have.

3          THE COURT:  I have also reviewed the plea agreement

4   and the transcript of the February 27, 2023 change of plea

5   hearing and the transcript of the May 2, 2023 continued plea

6   hearing in preparation for today's sentencing.

7          The revised sentence recommendation of the Probation

8   Department with respect to imprisonment and supervised

9   release, which I am not bound by, of course, is, as the

10  parties are aware:  With respect to Indictment Count One, a

11  sentence of imprisonment of 121 months to run concurrent with

12  the recommended term of imprisonment for Information

13  Counts One and Two, to be followed by a term of supervised

14  release of two years to run concurrent with the terms of

15  supervised release on all other counts; with respect to

16  Indictment Count Three, a sentence of imprisonment of

17  24 months to run consecutive to the recommended terms of

18  imprisonment for Indictment Count One and Information

19  Counts One and Two, to be followed by a term of supervised

20  release of one year to run concurrent with the terms of

21  supervised release on all other counts; and with respect to

22  Information Counts One and Two, a sentence of imprisonment of

23  121 months to run concurrent with each other and with the

24  recommended term of imprisonment for Indictment Count One, to

25  be followed by a term of supervised release of two years to

1    run concurrent with the terms of supervised release on all

2    other counts.

3            Have I correctly stated the Probation Department's

4    recommendation?

5            THE PROBATION OFFICER:  Yes, Your Honor.

6            THE COURT:  The Probation Department also recommends

7    five special conditions of supervised release.

8            You have all seen the conditions in full but to

9    summarize:  The defendant's first condition is that the

10   defendant shall comply with any possible restitution orders;

11   the second condition proposed or recommended by the Probation

12   Department is a special condition relating to financial

13   records and accounts; the third is a special condition

14   relating to identification information; the fourth special

15   condition is that if removed, the defendant may not reenter

16   the United States illegally; and the fifth recommended special

17   condition is that the defendant shall cooperate with and abide

18   by all instructions of Immigration authorities.

19           The parties can, of course, be heard later on if

20   they wish to be heard on special conditions but you've had

21   them for some time now and I know you are familiar with them.

22           Is either party seeking an evidentiary hearing?

23           Mr. Pitluck?

24           MR. PITLUCK:  No, Your Honor.  I don't believe it's

25   necessary.

12

1          THE COURT:  Mr. Gregory?

2          MR. GREGORY:  No, Your Honor.

3          THE COURT:  Mr. Pitluck, were all applicable victim

4   notification requirements complied with?

5          MR. PITLUCK:  Yes, Your Honor.

6          THE COURT:  Were all victims of the crimes notified

7   of their right to attend sentencing?

8          MR. PITLUCK:  They were, Your Honor.

9          THE COURT:  And are any victims present?

10          MR. PITLUCK:  No, Your Honor.

11          THE COURT:  Do you have any reason to believe any

12   victims wish to speak today?

13          MR. PITLUCK:  No, Your Honor.  We asked them and

14   they declined.

15          THE COURT:  Let me talk a moment about restitution.

16          For Counts One and Three of the Indictment, could

17   the government confirm that the restitution being sought is a

18   total of $1,527,726.76?

19          Do you want me to repeat that?

20          MR. PITLUCK:  Just one moment, Your Honor, because I

21   think I may have a slight change.  Is that the number listed

22   in our sentencing letter?

23          THE COURT:  I believe so.

24          MR. PITLUCK:  Why don't you repeat it and I'll see.

25          THE COURT:  Yes.  $1,527,726.76.

13

1          MR. PITLUCK:  Your Honor, I believe that is correct.

2    I might have overstated the amount in the Eastern District of

3    New York matter because there was about $60,000 that was

4    ascribed to the other defendant in this case that does not

5    apply to Mr. Modile, so I would just need to give the Court a

6    slightly revised number.

7          THE COURT:  Well, you've got to do that now.  We are

8    here for sentencing now.

9          MR. PITLUCK:  I just -- after sentencing, I was

10   going to submit an order.

11         THE COURT:  No.  No.  That's not how we're going to

12   proceed.  You've given the court a number.  There's no reason

13   the court should have known you were going to change anything

14   and we're here for sentencing so my understanding is that's

15   the accurate number.

16         MR. PITLUCK:  Let me just confirm one second, Judge.

17         THE COURT:  And I've got the breakdown by victim as

18   well if that helps.

19         MR. PITLUCK:  Yes, that would be helpful.

20         THE COURT:  So what I understand is restitution in

21   the amount of $289,450 to Victim Number 1; $96,276.76 to

22   Victim 2; and $1,142,000 to Company 1.

23         MR. PITLUCK:  That's accurate, Your Honor.  Thank

24   you.  Sorry.

25         THE COURT:  Just going forward, the government

14

1    should not assume when it's given restitution information,

2    that there will be any subsequent proceedings.  The time

3    really to do it when it can be determined is before we arrive

4    at sentencing.

5              So it sounds like you have your right numbers.

6    Maybe you had a little bit of confusion for a moment there.

7              MR. PITLUCK:  Yes.

8              THE COURT:  But if the numbers are right, we'll

9    proceed.

10             MR. PITLUCK:  Yes.

11             THE COURT:  Mr. Gregory, do you agree those are the

12   right numbers?

13             MR. GREGORY:  Yes, I do, Judge.

14             THE COURT:  Okay.  Let me continue then.

15             For Counts One and Two of the Information, can you

16   confirm that the restitution amount is $358,774?

17             MR. PITLUCK:  Yes, Your Honor.

18             THE COURT:  Okay.  And that is broken down as

19   follows:  $78,350 to Victim Number 3, $120,696 to Victim 4,

20   and $159,728 to Victim 5.

21             Is that correct, Mr. Pitluck?

22             MR. PITLUCK:  Yes, Your Honor.

23             THE COURT:  Okay.  And do you agree with that,

24   Mr. Gregory?

25             MR. GREGORY:  Yes.

15

1          THE COURT:  As the parties are aware, an order of

2     forfeiture dated February 14, 2024, which is ECF Number 53,

3     has been entered on docket number 21-CR-108, which indicates

4     that defendant has consented to the entry of a forfeiture

5     money judgment in the amount of $1,167,375.18 pursuant to the

6     terms of the order of forfeiture.

7          Mr. Gregory, have you read the PSR including the

8     addendum and discussed it with your client?

9          MR. GREGORY:  Yes, I have, Your Honor.

10         THE COURT:  Mr. Modile, let me ask you directly,

11    have you read that PSR, that presentence report including the

12    addendum?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Have you discussed the PSR with the

15    addendum with your attorney, Mr. Gregory?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And have you had enough time and

18    opportunity to review the PSR with the addendum and to discuss

19    it with your attorney?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Have you had the opportunity to go over

22    with your attorney any errors you think there might be in the

23    report?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Have you had the opportunity to discuss

1    with your attorney anything you would like to have taken up

2    with the court today?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Are you satisfied with Mr. Gregory's

5    representation including having him represent you at

6    sentencing?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Mr. Pitluck, have you read the PSR

9    including the addendum?

10           MR. PITLUCK:  I have, Your Honor.

11           THE COURT:  So when I refer to the PSR during this

12   proceeding going forward, I am going to use that term to refer

13   to the PSR and the addendum together.

14           I am going to go over now whether there are any

15   objections to the PSR regarding the accuracy of the factual

16   recitations contained therein.

17           Does any party have any objection to the accuracy of

18   the factual recitations in the PSR that have not already been

19   addressed?

20           Mr. Pitluck?

21           MR. PITLUCK:  No, Your Honor.

22           THE COURT:  Mr. Gregory?

23           MR. GREGORY:  No.

24           THE COURT:  I adopt the factual recitations in the

25   PSR.  Again, I mean that to include the addendum as well.

17

1        Although the court is no longer required to follow

2    the United States Sentencing Guidelines because they are not

3    mandatory, I am still required to consider the applicable

4    guidelines in imposing sentence.  To do that, it is necessary

5    for me to accurately calculate the guidelines sentencing

6    range.

7        In this case, there was a plea agreement in which

8    defendant stipulated to a particular calculation of the

9    sentencing guidelines which resulted in an adjusted offense

10   level of 29 and an advisory guidelines range of 121 to

11   151 months of imprisonment based on an assumption of criminal

12   history category IV, in addition to the mandatory consecutive

13   24 months of imprisonment on Count Three of the Indictment

14   resulting in an effective guidelines range in the government's

15   position of 145 to 175 months.

16       The guidelines calculation assumed the application

17   of both a two level reduction for acceptance of responsibility

18   pursuant to Sentencing Guidelines Section 3E1.1(a) and a one

19   level reduction for acceptance of responsibility pursuant to

20   Sentencing Guideline Section 3E1.1(b).

21       First, have I correctly stated your position in the

22   plea agreement, Mr. Pitluck?

23       MR. PITLUCK:  You have, Judge.  Thank you.

24       THE COURT:  And is the government moving for the

25   third acceptance point under 3E1.1(b) and, if so, can you give

18

1  me the basis?

2          MR. PITLUCK:  Yes, Your Honor, we are.  The

3  defendant timely pleaded guilty, has abided by the terms of

4  the plea agreement, and gave the government ample notice of

5  his intent to plead guilty prior to trial, and has not

6  misrepresented or perjured himself in the time leading up to

7  the sentencing or any post-plea proceedings.

8          THE COURT:  Thank you.

9          I am now going to address the PSR sentencing

10  guideline calculation and, again, when I say the PSR, I mean

11  to include the addendum because as I noted earlier, the

12  addendum did make some changes.

13          Can the Probation Officer confirm for me that using

14  the 2023 guidelines manual which is the manual now in effect

15  does not change any of the relevant information contained in

16  the PSR?

17          THE PROBATION OFFICER:  Correct, Your Honor.  The

18  amendments in effect on November 1, 2023 do not affect the

19  guideline calculation.

20          THE COURT:  Thank you.

21          And do the parties agree that using the 2023

22  guidelines manual is appropriate now and that nothing in the

23  PSR needs to be changed in light of the 2023 guidelines

24  manual?

25          Mr. Pitluck?

1          MR. PITLUCK:  That's right, Judge.

2          THE COURT:  Mr. Gregory?

3          MR. GREGORY:  Yes.

4          THE COURT:  The court does use the 2023 manual.

5          So I am going to go through now the Probation

6    Department's calculations.  And, again, because there are four

7    different counts across two different cases, it will take me

8    some time so I'd like you to just pay careful attention

9    because I will ask you about my recitation of what's in the

10   PSR.

11         So in the PSR which, again, I mean to include the

12   addendum, the Probation Department has calculated a total

13   offense level of 29 and I'll set forth how they arrived at

14   that.

15         With respect to Count One of the Indictment, the

16   Probation Department calculated an offense level of 31 as

17   follows:  A base offense level of 7 pursuant to Sentencing

18   Guidelines Sections 2X1.1(a) and 2B1.1(a)(1); a 20 level

19   increase pursuant to Sentencing Guidelines

20   Section 2B1.1(b)(1)(K) because defendant is accountable for

21   $11,200,000 in losses.

22         Initially, the PSR had talked about intended losses

23   but I understand from reading the addendum, that the Probation

24   Office agrees with the government that the actual loss amount

25   is what is reflected there.

20

1      Is that correct?

2      THE PROBATION OFFICER:  Yes, Your Honor.

3      THE COURT:  I know that the defense may want to be

4   heard on this issue, but I'm going through what the Probation

5   Department --

6      MR. GREGORY:  Yes.  No, I understand that, Judge.

7      THE COURT:  -- has stated.

8      Okay.  A 2 level increase pursuant to Sentencing

9   Guideline Section 2B1.1(b)(10)(C) because the instant offense

10  involved sophisticated means.  And a 2 level increase pursuant

11  to Sentencing Guideline Section 2B1.1(b)(11)(C)(i).  That was

12  with respect to Count One of the Indictment.

13     With respect to Count Three of the Indictment, the

14  Probation Department noted that for a violation of United

15  States Code, Section 1028A, pursuant to Sentencing Guideline

16  Section 2B1.6, the guideline sentence is the term of

17  imprisonment required by statute which, in this case, is two

18  years.  The Probation Department also noted that pursuant to

19  Sentencing Guideline Section 2B1.6(a), Chapters 3 and 4 shall

20  not apply to this count of conviction.  And, again, I'm

21  talking about Count Three of the Indictment.

22     The Probation Department grouped Counts One and Two

23  of the Information, pursuant to Sentencing Guidelines

24  Section 3D1.2.

25     With respect to Counts One and Two of the

1   Information, the Probation Department calculated an offense

2   level of 26 as follows:  A base offense level of 6, pursuant

3   to Sentencing Guidelines Section 2S1.1(a) and 2B1.1(a)(2); a

4   12 level increase pursuant to Sentencing Guidelines

5   Section 2B1.1(b)(1)(G), based on a loss of $358,774; a 2 level

6   increase pursuant to Sentencing Guidelines

7   Section 2B1.1(b)(10)(C) because defendant's conduct involved

8   sophisticated means; a 2 level increase pursuant to Sentencing

9   Guidelines Section 2B1.1(b)(11)(C)(i); a 2 level increase

10  pursuant to Sentencing Guidelines Section 2S1.1(b)(2)(B)

11  because defendant was convicted under Title 18, United States

12  Code, Section 1956; and a 2 level increase pursuant to

13  Sentencing Guidelines Section 3B1.1(c) because defendant was

14  an organizer, leader, manager or supervisor in criminal

15  activity other than described in Sentencing Guidelines

16  Section 3B1.1(a) or (b).

17          My law clerk has informed me that I misspoke when I

18  stated the statutory provision for the 1028.  It's obviously

19  Title 18, United States Code, 1028A.

20          Thank you.

21          Picking up with the Probation Department's

22  guidelines calculation, the Probation Department applied

23  Section 3D1.4 and determined a combined offense level of 32.

24          The Probation Department then applied a 2 level

25  decrease for acceptance of responsibility pursuant to

1    Sentencing Guidelines Section 3E1.1(a), and an additional

2    1 level decrease for acceptance of responsibility pursuant to

3    Sentencing Guidelines Section 3E1.1(b), based on the

4    government's anticipated motion.

5             The Probation Department calculated a criminal

6    history category of IV based on a criminal history score of 8.

7    The Probation Department sets forth that at offense level 29,

8    with criminal history category IV, the advisory guidelines

9    range of imprisonment for Count One of the Indictment and for

10   Counts One and Two of the Information is 121 to 151 months.

11            The Probation Department notes that pursuant to

12   Title 18, United States Code, Section 1028A, the mandatory

13   term of imprisonment for Count Three of the Indictment is two

14   years, to run consecutively to any other counts.

15            The Probation Department noted a guidelines fine

16   range of $30,000 to $300,000, pursuant to Sentencing

17   Guidelines Section 5E1.2(c)(3).

18            The Probation Department also noted that the

19   guidelines range for supervised release for Count One of the

20   Indictment is two to five years pursuant to Sentencing

21   Guidelines Section 5D1.2(a)(1); for Count Three of the

22   Indictment is one year pursuant to Sentencing Guidelines

23   Section 5D1.2(a)(3), and for Counts One and Two of the

24   Information is one to three years on each count pursuant to

25   Sentencing Guidelines Section 5D1.2(a)(2).  And the Probation

23

1   Department noted that pursuant to statute, multiple terms of

2   supervised release shall run concurrently.

3           So that was a lot of information, a lot of me

4   setting forth what is in the PSR which I mean to include the

5   addendum.

6           Can the parties just confirm that I have accurately

7   stated what the Probation Department's position is as

8   reflected in their submission?

9           MR. PITLUCK:  You have, Judge.

10          MR. GREGORY:  Yes, Your Honor.

11          THE COURT:  Okay.

12          Does either party at this time wish to raise any

13  objections to the guidelines calculations set forth in the

14  PSR?

15          MR. PITLUCK:  No, Your Honor, we concur with the

16  guidelines set forth in the PSR as amended.

17          THE COURT:  Mr. Gregory?

18          MR. GREGORY:  Well, Judge, obviously, we have a

19  letter.  If you want me to address these issues now or we can

20  wait, but based on the calculation, I have no objection to the

21  way in which you characterized their calculation.

22          THE COURT:  No, I'm asking you about your objections

23  to the guidelines calculation in the PSR.  I'm asking you to

24  state them now.

25          You have put it in a letter.

24

1           MR. GREGORY:  Okay, Judge.

2           THE COURT:  I know there was some back and forth

3 with the government and you walked away from certain

4 objections, so I'm asking you now do you have any objection to

5 the guidelines calculation set forth in the PSR.

6           MR. GREGORY:  I have to be careful here that I don't

7 violate the plea agreement, but what I will say is this.

8           THE COURT:  Before you go ahead, let me just say I'm

9 going to be asking you separately about whether you're asking

10 for any departures or a variance, right, but I'm asking now

11 just the way the Probation Department has set forth their

12 calculation, do you have any objections?

13           MR. GREGORY:  Well, Judge, my objection would be to

14 the loss amount, to start with.  If you want me to address

15 this now or wait --

16           THE COURT:  Yes, I would like you to address it now.

17           MR. GREGORY:  Yes, Judge.

18           THE COURT:  If you can just talk into the

19 microphone.

20           MR. GREGORY:  Sorry about that.  Do you want me to

21 stand?

22           THE COURT:  Either way, whatever is easier for you,

23 as long as we can hear you.

24           MR. GREGORY:  Thank you.

25           Judge, I think the case law has now raised an issue

25

1    with respect to loss and that intended loss is part of the

2    commentary.  The clear language of the guidelines is actual

3    loss and loss means deprivation, what you were essentially

4    out.

5         Here, I don't see that there's any distinction

6    between money that was actually aspirated and taken and then

7    recovered and money that was actually never taken.  I don't

8    see that that's --

9         THE COURT:  Do you have any case law to support

10   that?  The government obviously is taking a different

11   position, that the money was not, the money -- the government

12   was able to get the money back after the investigation

13   started.

14        Is that correct, Mr. Pitluck?

15        MR. PITLUCK:  Some of it, yes, Judge.

16        THE COURT:  But this was not something that, without

17   any investigation, the defendant gave the money back.  Is that

18   correct?

19        MR. PITLUCK:  No, Your Honor.  As we described in

20   the letter, this, law enforcement was able to learn of it and

21   claw some of it back on their own.

22        THE COURT:  Right.

23        Do you have any case law to support your position in

24   light of the facts here, Mr. Gregory?  Because we're not -- I

25   don't now understand you to be saying that -- well, maybe you

1  are.  I don't want to put words in your mouth.  But I think

2  we're in the territory of actual loss here as the government

3  has really carefully laid out in its submission and not

4  intended loss.

5          MR. GREGORY:  Judge, I have cases that were decided

6  by Judge Donnelly, Judge Amon and by the Third Circuit, the

7  Banks case, which clearly states that loss is a permanent

8  deprivation, that that means that the money never got back.

9          Here, the money was recovered.  It was restored to

10 the original owners which means that it wasn't a loss.  So

11 it's really just plain language of what the dictionary defines

12 as loss.  Merely because the government had to chase after it

13 to get it back really doesn't change it.  If they had

14 prevented it from ever being moved, it would not be an actual

15 loss.  It would be an intended -- sorry.

16         THE COURT:  But is it your position that for any

17 financial fraud or, you know, any fraud where somebody, let's

18 say, on the eve of sentencing, pays the money back, then

19 there's no actual loss for guidelines purposes?  Do you have

20 any cases to support that?  It sounds like that's what you're

21 saying.

22         MR. GREGORY:  No, Judge, but this issue is a

23 relatively new issue.

24         THE COURT:  I don't think the issue that you're

25 describing is.  I think the issue of intended loss versus,

27

1  where there was never any money, for instance, taken is very

2  different than a situation where the money went out from the

3  victim.

4       MR. GREGORY:  Judge, I think --

5       THE COURT:  And I'm not sure that those cases that

6  you've cited are on point here.

7       MR. GREGORY:  Well, they're not on point, but I'm

8  not sure that there's any case that exists where the money was

9  actually taken and then recovered, but what I would say is

10  that the principle of the definition of loss applies, whether

11  or not the money was taken and then recovered or whether or

12  not the money was prevented from being taken.

13       I would also say, Judge, yes, that you asked a

14  question, if somebody returned the money right before sentence

15  and the victims were restored to where they were before the

16  money was taken, that that wouldn't be a loss under the

17  definition of what loss is and under Banks and the cases that

18  were decided by Judge Donnelly and Judge Amon.

19       So the answer to that would be yes.

20       THE COURT:  Okay.  Thank you for your position on

21  that.

22       Let me hear from Mr. Pitluck.

23       MR. PITLUCK:  Your Honor, I think that, I understand

24  why Mr. Gregory is making the point.  I don't agree with it

25  legally or factually.

1          The guidelines and the case law make clear that loss

2   is what, the actual loss is what is taken from the victims.

3   If it were the case that you could just pay back the victims

4   of your fraud and have a zero guideline of loss would

5   effectively give defendants who had the means to pay a victim

6   back a windfall at sentencing and I'm not aware of a case or a

7   provision in the guidelines that say that.

8          I think that Banks and the cases that Mr. Gregory

9   are discussing are what Your Honor referred to in the

10  theoretical of intended loss where there is evidence that the

11  defendant intended to take an amount of money from victims but

12  were thwarted or not able to follow through with that and

13  pre-Banks, that was certainly, in all circuits, counted as

14  loss.  I think it's very much an open question here in the

15  Second Circuit as we noted in our letter but that's --

16  Your Honor's point is that's not the issue here.

17         So I understand why, I think, Mr. Gregory is arguing

18  as to what the loss actually, what the victims were actually

19  out which I believe is more of a 3553 argument than a dispute

20  with the guidelines, but our position is that the guidelines

21  here accurately account for actual loss and should be applied.

22              THE COURT:  Okay.  Do you want to be heard further?

23              MR. GREGORY:  Judge, I just would say --

24              THE COURT:  Yes.

25              MR. GREGORY:  -- as a policy statement, I think that

1   were people who committed fraud incentivized to restore the

2   money, they would still be sentenced in some respect, but the

3   idea that you could be rewarded for making your victims whole

4   I don't think would be a bad public policy.

5           THE COURT:  Why isn't it so what Mr. Pitluck just

6   said?  Why isn't your better argument under 3553(a) as a

7   consideration that, you know -- go ahead.

8           MR. GREGORY:  Judge, the reason why is that I think

9   here, that Mr. Modile wasn't responsible for getting that

10  money back.  Law enforcement was.  So the strict reading of

11  the definition of loss that Banks gives us and these other

12  cases give us, actual loss means permanent deprivation.

13          So I'll talk about the 3553 issues and, certainly,

14  Judge, I'll concede that Mr. Pitluck and certainly the Court

15  know the guidelines better than I do, and the 3553 arguments

16  are where this case I think really has some meat on the bones.

17          THE COURT:  Okay.  Thank you.

18          Do you have any other objections to the guidelines

19  set forth in the PSR?

20          MR. GREGORY:  Judge, I do have one, and I framed it

21  during my argument in my papers that the cases which came out

22  of California, one which was a fraud involving Treasury checks

23  which really emanated, I'm not sure it's clear from the

24  papers, in the District of Georgia, I don't remember which

25  district, and was transferred to California.

30

1          The second case was the passport fraud case and I

2     argued that there were relevant conduct and I think what I

3     should have done, the Court will pick up on this quickly, I

4     know Mr. Pitluck will too, was really make a distinction

5     between those two cases and talk about them separately.

6          I think the Georgia case may be, which was the

7     initial case where Mr. Modile got the six month sentence, I

8     think it was, time served, may be more of a stretch.

9          I do think, Judge, that the passport fraud case

10    really should be considered relevant conduct and I'll tell you

11    why.  The Information that brought about this prosecution was

12    found --

13          THE COURT:  Let me just stop you a moment.

14          Are you confident that you're not breaching the

15    agreement that you have?  Maybe you want to talk to

16    Mr. Pitluck.

17          MR. GREGORY:  Well, I'll change the language.

18          THE COURT:  I'm not suggesting you are or are not.

19    I'm just saying you might want to speak to each other.

20          MR. PITLUCK:  May we just a one moment?

21          THE COURT:  Yes.

22          (Pause.)

23          MR. PITLUCK:  Judge, I was a little confused.  I

24    think what Mr. Gregory is arguing about now is the calculation

25    of the criminal history category which is -- I've always taken

1    slightly differently as the guidelines.  We have to get the

2    criminal history right and the government does our best job to

3    estimate it based on the information we have and in this case,

4    I think we got it right but we had to work through with

5    Probation.

6            So I think what Mr. Gregory, I think what he's

7    trying to argue is as to whether there should be criminal

8    history points for those cases which I also addressed in our

9    papers.

10            THE COURT:  Yes, I know that.

11            MR. PITLUCK:  I don't take that to be a breach of

12   the agreement.

13            THE COURT:  And I'm not suggesting there was.  I

14   just, because you have -- there was a submission where

15   Mr. Gregory said he initially said something that might have

16   been a breach and I just want to make sure that you're all on

17   the same page here.  I don't take a position one way or the

18   other.

19            MR. PITLUCK:  We had a chance to talk, Judge, and we

20   are on the same page.

21            THE COURT:  Okay.

22            MR. GREGORY:  Judge, I think I can phrase it more

23   that the Court should consider -- and this, obviously, goes to

24   criminal history, it's in the papers -- that case out of the

25   District of California involving passport fraud where

32

1    Mr. Modile was sentenced to a short sentence plus a sentence

2    for aggravated identity theft.

3            The Court could consider and should just analyze

4    whether or not that might be considered relevant conduct.  I

5    say that because the evidence that was used to prosecute that

6    case was found on the same day as the search that the evidence

7    for the Eastern District or much of the evidence in the

8    Eastern District case was found and that was May 9, 2018, in

9    the Central District of California.

10           And, you know, you know the facts, Judge, and you

11   know the law, and I just kind of point the Court towards that

12   issue.  The court will decide what it decides.  It does change

13   his criminal history, if the Court were to adopt that finding,

14   from a 4 to a 3.  I think, it would knock off three points.

15           THE COURT:  I mean the government very persuasively

16   argues that this is not relevant conduct.  The government, I

17   should also say, very persuasively argues that the loss that

18   we're talking about here is actual loss, not intended loss.

19           So with respect to your two objections, the court

20   finds them to be unavailing.  If you would like to be heard

21   further, I'll hear you out.

22           MR. GREGORY:  No, Judge.  You know the laws and you

23   have the papers, so I don't need to, you know, belabor this.

24           THE COURT:  Yes.  I should say that I think both

25   parties very clearly presented their positions here and, yes,

1  I understand why you're making the arguments you're making but

2  I don't think that they are, the two objections that you've

3  raised are supported or meritorious.

4          One moment, please.

5          (Pause.)

6          THE COURT:  Is there any other objection to the

7  guidelines calculation?

8          MR. GREGORY:  No.

9          THE COURT:  Based on my independent evaluation of

10  the Sentencing Guidelines, I accept and adopt the guidelines

11  calculation in the PSR which, again, I mean to include the

12  addendum.  I am going to go through, again -- now that I'm

13  making my finding, I'm going to walk through again the

14  guidelines calculation so, again, I just ask you to pay

15  careful attention but it will sound familiar to you.

16          I find a total offense level of 29, calculated as

17  follows.

18          With respect to Count One of the Indictment, a base

19  offense level of 7 pursuant to Sentencing Guidelines Sections

20  2X1.1(a) and 2B1.1(a)(1), a 20 level increase pursuant to

21  Sentencing Guidelines Section 2B1.1(b)(1)(K) because the loss

22  is more than $9,500,000 which, again, the government has

23  persuasively argued based on the facts and the law that that

24  is actual loss, a 2 level increase pursuant to Sentencing

25  Guidelines Section 2B1.1(b)(10)(C) for sophisticated means,

34

1    and a 2 level increase pursuant to Sentencing Guidelines

2    Section 2B1.1(b)(11)(C)(i) because the offense involved the

3    unauthorized transfer or use of means of identification

4    unlawfully to produce or obtain other means of identification,

5    bringing the offense level to 31.

6            With respect to Count Three of the Indictment,

7    pursuant to Sentencing Guidelines Section 2B1.6(a), the

8    guidelines sentence is the term of imprisonment required by

9    statute which is two years.  Additionally, pursuant to

10   Sentencing Guidelines Section 2B1.6(a), Chapters 3 and 4 shall

11   not apply to this count of conviction.

12           Counts One and Two of the Information are grouped

13   pursuant to Sentencing Guidelines Section 3D1.2.

14           With respect to Counts One and Two of the

15   Information, I find a base offense level of 6 pursuant to

16   Sentencing Guidelines Section 2S1.1(a) and Sentencing

17   Guidelines Section 2B1.1(a)(2).

18           I find a 12 level increase, pursuant to Sentencing

19   Guidelines Section 2B1.1(b)(1)(G), based on a loss of

20   $358,774, a 2 level increase pursuant to Sentencing Guidelines

21   Section 2B1.1(b)(10)(C) for sophisticated means, a 2 level

22   increase pursuant to Sentencing Guidelines

23   Section 2B1.1(b)(11)(C)(i), again, because the offense

24   involved the unauthorized transfer or use of means of

25   identification unlawfully to produce or obtain other means of

1    identification, a 2 level increase pursuant to Sentencing

2    Guidelines Section 2S1.1(b)(2)(B) because defendant was

3    convicted under Title 18, United States Code, Section 1956,

4    and a 2 level increase pursuant to Sentencing Guidelines

5    Section 3B1.1(c) because defendant was an organizer, leader,

6    manager or supervisor in criminal activity other than

7    described in Sentencing Guidelines Section 3B1.1(a) or (b),

8    and that's demonstrated by the record before me and as set

9    forth in the PSR.

10          That brings the offense level to 26.  Applying

11   Sentencing Guidelines Section 3D1.4, the combined offense

12   level is 32.

13          I apply a 2 level decrease for acceptance of

14   responsibility pursuant to Sentencing Guidelines

15   Section 3E1.1(a) and an additional 1 level decrease for

16   acceptance of responsibility pursuant to Sentencing Guidelines

17   Section 3E1.1(b) on the government's motion which I grant.

18          I find a criminal history category of IV.  At

19   offense level of 29, with criminal history category IV, the

20   advisory guidelines range of imprisonment on Count One of the

21   Indictment and Counts One and Two of the Information is 121 to

22   151 months of imprisonment and the fine range is $30,000 to

23   $300,000 pursuant to Sentencing Guidelines

24   Section 5E1.2(c)(3).  And, again, there is a consecutive

25   24 months of imprisonment required for Count Three of the

36

1  Indictment.

2         The supervised release range for Count One of the

3  Indictment is two to five years pursuant to Sentencing

4  Guidelines Section 5D1.2(a)(1); for Count Three of the

5  Indictment is one year pursuant to Sentencing Guidelines

6  Section 5D1.2(a)(3); and for each of Counts One and Two of the

7  Information is one to three years pursuant to Sentencing

8  Guidelines Section 5D1.2(a)(2).  Pursuant to statute, multiple

9  terms of supervised release shall run concurrently.

10        Are there any objections to the guidelines

11  calculation as I have stated other than what's already been

12  raised?

13        Mr. Pitluck?

14        MR. PITLUCK:  No, Your Honor.

15        THE COURT:  Mr. Gregory?

16        MR. GREGORY:  No.

17        THE COURT:  With respect to the PSR, I have asked

18  about objections to the factual, the accuracy of the factual

19  recitations and about objections to the guidelines

20  calculation.  I have resolved any issues that were raised.

21        I will now ask are there any objections to any part

22  at all of the PSR including the addendum that either party

23  wants to raise that have not yet been raised?

24        Mr. Pitluck?

25        MR. PITLUCK:  No, Your Honor.

37

1          THE COURT:  Mr. Gregory?

2          MR. GREGORY:  No, Your Honor.

3          THE COURT:  I adopt the PSR with the addendum.

4          Mr. Gregory, you know, you raised those objections

5   which I did not find to be persuasive, but I will consider the

6   arguments you raised in connection with those in connection

7   with considering the 3553(a) factors and I assume that you

8   will probably be arguing that to me as well.

9          MR. GREGORY:  A little bit on that, Judge.

10          THE COURT:  Okay.  But I will be considering those

11   issues that you have raised.

12          MR. GREGORY:  Good.  Thank you, Judge.

13          THE COURT:  Okay.

14          Let me hear now from the parties regarding their

15   positions on any departures that they believe are warranted.

16   I will hear your arguments and I will consider whether to

17   grant any departure from the applicable advisory guidelines

18   range that I found and what I am talking about now is a

19   departure from the guidelines range as distinct from a

20   variance based on the statutory sentencing factors found in

21   Title 18, United States Code, Section 3553(a) which, again, I

22   am going to discuss more shortly.

23          So, Mr. Pitluck, you have not made a departure

24   motion and I know in your plea agreement, you have agreed not

25   to make an upward departure motion based on information at

38

1  that time known to you, but are you making any departure
2  motion?
3           MR. PITLUCK:  No, Your Honor.
4           THE COURT:  Mr. Gregory, are you making any
5  departure motion?
6           MR. GREGORY:  No.
7           THE COURT:  Notwithstanding that no motions were
8  made, I still have considered whether or not there is an
9  appropriate basis for a departure from the advisory guidelines
10 range that I found, either upward or downward, and while
11 recognizing my authority to depart, I do not find any
12 departure is warranted here on the record before me.  And
13 again, I'm talking in terms of departure within the meaning of
14 the guidelines.
15          One moment, please.
16          (Pause.)
17          THE COURT:  Mr. Gregory, you had earlier asked if
18 your paralegal can speak.  Is he a lawyer?
19          MR. GREGORY:  He's not, Judge.
20          THE COURT:  Okay.  So he's not a lawyer and he's not
21 formally appearing in this case.  I'm not going to allow him
22 to speak in lieu of you but I will allow him to speak
23 additionally, but you are the lawyer and I also want to make
24 sure that Mr. Modile is comfortable having your paralegal
25 speak.  Is he?

39

1          THE DEFENDANT:  Yes, I'm comfortable.

2          THE COURT:  Let me just have you speak into the

3    microphone.

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  So you would like to have

6    Mister --

7          MR. GREGORY:  Hernandez.

8          THE COURT:  Yes, Mr. Hernandez speak in addition to

9    your lawyer speaking, is that right?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  I will allow that.

12          Does the government have any issue with that?

13          MR. PITLUCK:  No, Your Honor.

14          THE COURT:  But, first, I'm going to give -- well,

15    I'm going to give the government the opportunity to be heard.

16          There's no victims, the government has represented

17    there's no victims that wish to be heard today.  They would be

18    given an opportunity but there's nobody, right?

19          MR. PITLUCK:  No, Your Honor.  We've been in contact

20    with them and they're aware of the case but nobody from any of

21    the victim companies or individuals either filed a letter or

22    requested to speak with the Court.  I can speak on their

23    behalf, Judge.

24          THE COURT:  Okay.  And then I'll give the defense

25    counsel an opportunity to speak, Mr. Gregory, and your

40

1    paralegal as well, and then I'll give Mr. Modile an

2    opportunity to speak.  He is not required to but he certainly

3    has a right to and he is welcome to be heard with regard to

4    sentencing.

5            So, and, again, you know, there were a lot, there

6    were a lot of submissions.  There's two different cases here.

7    I have considered everything that has been put before me.  I

8    have spent quite a bit of time with these materials in these

9    two cases that I am sentencing Mr. Modile on today so there's

10   no need for you to repeat but I am also not in a hurry.  I

11   will hear you out on anything that you wish to raise.  These

12   are some serious offenses and the guidelines range is

13   significant here so I would like to hear everyone out on

14   anything you want to tell me in addition to what you've said

15   or just, you know, even if there's some overlap.

16           So, Mr. Pitluck, do you wish to be heard with

17   respect to sentencing?

18           MR. PITLUCK:  Very, very briefly, Judge.

19           I think as Your Honor indicated, we filed a lengthy

20   letter that I know you have read, but I do want to talk a

21   little bit about the seriousness of the conduct because, for a

22   number of reasons.

23           The first thing is that these what we call HELOC

24   frauds, home line of equity credit frauds, I've had a chance

25   to talk to victims in this case and other cases about HELOC

1  frauds and they are a very jarring type of fraud for a victim

2  to experience because it basically not just jeopardizes their

3  financial ability, it jeopardizes their home ownership.  And

4  the way in which these frauds were taken over by having

5  somebody's identity stolen through fake IDs, and then have

6  these HELOCs actually drawn down on is very jarring for

7  victims to understand.

8          Unfortunately, in many cases -- I know in the Texas

9  case, it jeopardized a down payment for a new home as it

10  related to one of the victims.  And it's, you know -- every

11  fraud is jarring on a victim, but these kind of hit from two

12  angles; not just your financial liability and not just your,

13  the theft of your identity, but the fact that if it's not

14  straightened out appropriately, you can lose your home.  And

15  that's, that's a very difficult thing to understand.

16          I also do want to address for the Court why we

17  recommended a sentence of 120 months in this case.

18          As the Court knows, usually the government requests

19  a guideline sentence but in fraud cases in the area where I

20  practice, the fraud guidelines in this case are quite high and

21  lead to quite a very high guidelines range and I want to be

22  clear, we are requesting a sentence of 120 months which is ten

23  years in prison.  That is a very serious sentence,

24  particularly for a nonviolent offender like Mr. Modile, but

25  there are three factors motivating our well thought out

42

1    request.

2            First is the disparity with other sentences.  There

3    are -- there's one other sentenced defendant here.  He's

4    situated differently than Mr. Modile, but he received a

5    sentence of time served which amounted to about four years'

6    imprisonment.

7            THE COURT:  Are you able to speak about which case?

8    Because there are, again, two different cases here, four

9    different crimes that I'm looking at.

10           MR. PITLUCK:  I'm sorry, Judge, this is in the EDNY,

11   the Indictment case.  Nobody else as far as I know was charged

12   in connection with the Southern District of Texas case.  I'm

13   sorry if I didn't make that clear.

14           THE COURT:  That's okay.

15           MR. PITLUCK:  There was a defendant who was

16   sentenced by Judge Brodie situated differently and his

17   sentence also, like Mr. Modile's, encompassed other conduct

18   that was not part of this.

19           THE COURT:  You're using the term "situated

20   differently."

21           MR. PITLUCK:  He cooperated with the government,

22   Judge.

23           THE COURT:  That's quite differently situated.

24           MR. PITLUCK:  It is quite differently situated.  But

25   that sentence, all in, would be about four times greater

43

1    which, you know, obviously, that's a very -- cooperating with

2    the government providing information including information

3    that led us to be able to arrest and prosecute Mr. Modile is

4    very important.

5            The second reason is I do give not as much credence

6    as Mr. Gregory does but some credence to the fact that the

7    guidelines might be slightly overstated.

8            There was actual loss in this case.  They took it,

9    but as our investigation revealed, Mr. Modile did not take

10   part in -- and I'm relating it to the victim company here

11   where essentially $2 million was taken -- we have no evidence

12   that Mr. Modile took part in the e-mail compromise.  He

13   obviously agreed to join the conspiracy, but he didn't know

14   exactly who was being targeted or how much was being taken.

15   And my, and our analysis of the evidence is that this was an

16   amount far greater than Mr. Modile normally deals with.  It

17   was $10.2 million that came into his account.

18           Now, he, of course, knowingly agreed to join the

19   conspiracy to help launder those proceeds and facilitate the

20   frauds therein, but I think as evidenced by the fact that they

21   were not able to move all that right away demonstrates that I

22   think this was a little bit outside of their realm and because

23   of the delays in moving it, law enforcement was able to locate

24   some of that, freeze it and return it to the victims which is,

25   they got about $9 million back almost instantaneously.

44

1          That was, I think as the Judge clearly pointed out,

2     not through any assistance from Mr. Modile and his

3     co-conspirators, that was on their own accord, but I think

4     that the loss there was a little bit surprising, the amount,

5     that was a little bit surprising to Mr. Modile.

6          And the third reason, Your Honor, is the conditions

7     of the defendant's incarceration over the last --

8          THE COURT:  Before you get to that --

9          MR. PITLUCK:  Yes.

10         THE COURT:  -- let me ask you about Mr. Modile's

11    role in recruiting other co-conspirators as referenced in the

12    PSR.

13         What can you tell me about that?

14         MR. PITLUCK:  Yes, Your Honor.  That's primarily

15    in -- the evidence that we have of that is primarily in the

16    Southern District of Texas case.

17         My understanding is that Mr. Modile had recruited

18    individuals to work for him who were able to, able to open

19    accounts and transfer money through the accounts so that they

20    could be laundered back to him.  And I think, Your Honor, that

21    is very appropriately accounted for in the guidelines

22    calculation in the Southern, in the Southern District of Texas

23    Information case.

24         THE COURT:  Thank you.

25         MR. PITLUCK:  And so finally, Judge, I think, as the

45

1    defendant points out, he's been in our custody throughout the

2    pandemic, has been, has been sick but I think most importantly

3    also has not gotten into any trouble, has been working.

4          Judge, having, as you did, practiced through the

5    pandemic, I'm not immune and our office is not immune to the

6    conditions of confinement that these inmates went through and

7    I think that his behavior in the penitentiary, sorry, the

8    MDC -- it's not a penitentiary, it's a facility -- does merit

9    consideration from the government.

10         That's why we landed at 120 months.  That's not to

11   take away from the seriousness of the conduct, from the fact

12   that this is repeated conduct, but it's a very carefully

13   arrived at number.

14         Unless the Court has any other questions, I'll stop

15   there.

16         THE COURT:  Not at this time.

17         MR. PITLUCK:  Okay.

18         THE COURT:  Mr. Gregory, do you wish to be heard

19   with respect to sentencing?

20         MR. GREGORY:  I do, Judge.  Thank you.

21         THE COURT:  All right.

22         MR. GREGORY:  Judge, what you just heard from

23   Mr. Pitluck, not to butter him up or in any way stating

24   anything that's not true is why he has the respect he has.  I

25   mean that was just a demonstration in the last three and a

46

1    half minutes of integrity and class and so I tip my hat to

2    Mr. Pitluck for understanding this case and also pointing out

3    something that he was really familiar with with respect to the

4    fraud and the amounts.  So I just like to say thank you,

5    Mr. Pitluck.

6            Judge, you know, one of the things I think that is

7    often missing in sentencing statements by defense lawyers is

8    that we avoid the harm.  We don't talk about it.  So, Judge,

9    in this case, there is harm.  Mr. Pitluck laid it out.

10           For somebody to look at their account on a Tuesday

11   and have $300,000 in credit and the next day have zero is a

12   shocking, difficult thing.  Fortunately, all the victims were

13   made whole with the exception of the insurance companies, but

14   there is real harm in this kind of behavior.

15           I know myself in the last month I've had to replace

16   two credit cards or debit cards because somebody tried to use

17   them, a minor inconvenience compared to what the victims in

18   this case went through.

19           Just a brief reminder to the Court that as somebody

20   who has an Immigration detainer, any programming that might

21   result in a further reduction, in addition to good time which

22   he will receive, will be inapplicable for Mr. Modile.

23           I believe, and the Court probably knows better than

24   I do, that under the First Step Act, in a nonviolent case like

25   this, he would be eligible up to a one-third reduction which

1    he won't get because of his immigration status.

2            Judge, I'm not going to belabor the torturous

3    conditions that he's been in for the last three years and

4    really before that which isn't a responsibility of the Court

5    or the government but, you know, when he was doing his

6    sentence on the previous case in the months before he was

7    brought to New York, people were dying in different places, he

8    had COVID four times, he suffered tremendously, and there's

9    been repeated lockdowns not just before he got to the MDC, but

10   actually in the MDC, where he's been in isolation for days and

11   days at a time.  And we know that isolation is used as a

12   punishment for people who violate the rules, people who use

13   cell phones or drugs, and he was, Mr. Modile was in a

14   situation where he had to undergo that punishment having had,

15   as you know, an unblemished record in prison.  That doesn't go

16   just for the time he was held at the MDC, but going back to

17   the entire sentence that he did in California.

18           I should remind the Court, and I know the Court's

19   rejected the argument that the prior case was, you know, part

20   of relevant conduct, but he was sentenced to a two year

21   consecutive sentence in California for the passport fraud case

22   and then sentenced, is going to be sentenced again to a

23   mandatory two year consecutive sentence for aggravated

24   identity theft and both those cases, and as I say, the

25   evidence for both cases emanated from the same search on the

1    same day.  So I just bring that to the Court's attention.

2           Judge --

3           THE COURT:  But the government's position is that

4    it's not the same conduct, right?

5           MR. PITLUCK:  That's right, Judge.

6           THE COURT:  Right.

7           MR. GREGORY:  No, I'm not saying it's the same

8    conduct.  You found -- you ruled on that.  What I'm saying is

9    it occurred during the same period of time and that the

10   evidence for the passport fraud was recovered at the same time

11   that much of the evidence for the Eastern District was

12   recovered.  That's all I'm saying.

13          THE COURT:  I mean your argument was he was

14   committing multiple crimes at the same time.

15          MR. GREGORY:  Right, Judge, but if he were

16   prosecuted -- if they had begun the prosecution in this case,

17   it was not intentionally devious conduct on the predecessor of

18   Mr. Pitluck, Mathew Miller, but when he was sentenced,

19   Mr. Modile was sentenced in California to that 30 month

20   sentence, nothing happened in the case until he was ready to

21   be released which I'll talk about in a minute.

22          So, certainly, had they instigated the prosecution

23   here earlier, it may have had an impact on his overall

24   sentence.  That's all I point out to the Court.

25          Judge, you received a letter which I think pretty

49

1  well describes Joseph Modile as an inmate from the supervisor

2  in the unit where he is, unit 42, which is in charge of all

3  the cooking and cleaning.

4          THE COURT:  Right.

5          You got a very, very strong performance rating,

6  appraisal, across the board on all the categories.

7          MR. GREGORY:  That's who he is, Judge.

8          THE COURT:  Yes.  No, I took note of that, yes.

9          MR. GREGORY:  I appreciate the Court looking at it

10 because I think it describes the real Joseph Modile when he's

11 at his best.

12         Judge, the reason why I asked the Court to hear from

13 Mr. Hernandez, and I'll lay out the predicate briefly, is that

14 Mr. Hernandez was an inmate at the MDC and then served a

15 sentence of five years and has some unique experience with

16 respect to what it is to come close to release and he'll talk

17 about that but, Judge, I think the hardest thing --

18         THE COURT:  I'd like your focus to be on your client

19 though.

20         MR. GREGORY:  No, it will.

21         THE COURT:  Okay.

22         MR. GREGORY:  The hardest thing that -- and, by the

23 way, Mr. Hernandez and Mr. Modile have met numerous times at

24 the MDC.  So they know each other and he knows the case.

25         The hardest thing, I think, that Joseph Modile has

50

1   had to deal with in this case -- again, Judge, it's not
2   malicious, it's not pre-planned, not devious -- was that
3   Mr. Modile was prepared to be released in the California case,
4   he was taken in Immigration custody, he was on his way back to
5   Nigeria, his friend brought him a special bag that he was
6   going to take with him but when he got off the flight in
7   Nigeria, and at the last minute just before he was supposed to
8   go, he was rearrested, brought into federal custody and
9   sentenced to 30 months.  He does the entire sentence.  He does
10  good time.  He's at Fort Dix.  He's gone through COVID,
11  recovery, COVID, recovery, deprivation, he's ready to go home
12  from Fort Dix.  Agents come out to Fort Dix from New York and
13  say, You're not going anywhere, you have another case in
14  New York.  He knew that was coming.
15          That psychologically, Judge, to be on your way home,
16  to finally be free and have that happen is literally
17  unintended, non-malicious torture and Hernandez, Louis
18  Hernandez has been through this.  If he could talk briefly,
19  three minutes, about his experience with release and how it
20  would impact Mr. Modile.
21          Mr. Hernandez?
22          MR. HERNANDEZ:  Good morning, Your Honor.
23          THE COURT:  Good morning.
24          MR. HERNANDEZ:  Just a little background.  In
25  August, I was a defendant in a multi case in Eastern District

1    before Judge Irizarry.  I was sentenced to five years.

2            THE COURT:  Can I just ask you to move the

3    microphone a little bit closer to you?  I want to make sure we

4    can all hear you.

5            MR. HERNANDEZ:  Okay.

6            I was sentenced to five years at the age of 21.  I

7    now appear in front of Judge Irizarry on numerous matters with

8    numerous attorneys such as Samuel Gregory, Zach Taylor,

9    Kenneth Montgomery and other attorneys.

10           Throughout my incarceration, I've learned that some

11   guys do time, some guys let the time do them.  What I mean by

12   that is the time that's used, use it wisely.  Some guys don't.

13           Mr. Modile, throughout my encounters with him, I've

14   noticed that he's always been positive, always been a

15   gentleman, very respectful, has a plan to move forward if he

16   is released at some point.  I know he has some serious

17   offenses.  I'm not downplaying his offenses or the nature of

18   the crimes he has committed.  I think he's here accepting

19   accountability for his actions and that's a great step moving

20   forward, I think.

21           There's something called a countdown when you're in

22   jail.  Usually when you reach this countdown, it's probably

23   about two months prior to being released.  It's an excitement,

24   a joy that we all prepare for.  We have a plan for being

25   released, we have a good support system with our families, and

1   I think just to have that taken away maybe two times, it's a
2   very hard impact that it has on Mr. Modile, his family, his
3   loved ones, and I think it's something that should be
4   considered.
5         I've met Mr. Modile.  Since the first time, he's
6   always been a great guy, very polite, very soft spoken, and I
7   just ask the Court to show him some leniency.
8         THE COURT:  Thank you.
9         MR. HERNANDEZ:  Thank you.
10        MR. GREGORY:  Judge, I'm going to be about another
11   three minutes.
12        THE COURT:  Go ahead.
13        MR. GREGORY:  Just family stuff.
14        THE COURT:  Yes.  Go ahead.
15        MR. GREGORY:  Which you have some.  He got good
16   grades.  Anybody would be proud of those grades.
17        You know, when his kids were young, he was a very
18   involved, doting father and he loved them all day, every day
19   when he was around, and he instilled, you know, the concept of
20   hard work and education.
21        I think the best example of that is, well, the older
22   daughter is at the United States Tennis Center in Orlando with
23   the Howard University tennis team where she's got a
24   scholarship, you know, and she couldn't be here.  She could
25   not come and the younger daughter couldn't come.  We hoped

53

1    they were going to come.  But I think the best example is the

2    younger daughter who really struggled with Joseph's absence.

3    At one point, she was even hospitalized, but she was, as the

4    Court knows, she's an A student.  You have that documentation.

5         THE COURT:  You said good students and good

6    athletes.

7         MR. GREGORY:  Good students, good athletes and solid

8    people.  She went from gymnastics where she was a national

9    gymnast and they couldn't afford it anymore and she went on to

10   join the track team and through hard work, she's now a really

11   up and coming nationally ranked hurdler.  She raises money for

12   the team.  She's just a solid person and they attribute, you

13   know, a lot of their discipline to the values that were

14   instilled upon them when they were young by their father.

15        Judge, I have to be honest with the Court, to his

16   own behavior, his own conduct he's lost touch with,

17   Mr. Pitluck didn't do that.  He doesn't do that to his kids.

18   Modile did.  And there's been a period of time in the past

19   when they were young where that connection has faded and I can

20   tell the Court, I think I mentioned it in my letter, my kind

21   of stirring up the past and trying to get them to focus on

22   their father really stirred up some emotions that had settled.

23        So it's a hard thing, Judge.  He did it to himself

24   but it doesn't mean that it's not a hard thing for all of

25   them.  I just think that when they point to the successes and

54

1  attribute it to the values that their father taught them, that

2  says something about who he is aside from his conduct in this

3  case.

4          The last thing I want to say, Judge, is that, you

5  know, you have the advantage of being a legal scholar and

6  understanding guidelines, understanding the law, Mr. Pitluck,

7  the same, but there's one benefit that you don't get which if

8  you had -- I think, no judge gets, that would inform you in a

9  way that perhaps criminal history guideline calculations

10 really can't perform here.

11         You know, it's often said that you can tell more

12 about the character of a person when you're involved in a

13 competitive sport like golf or competitive sports, cards and

14 chess, that the character of that person emerges in the way in

15 which they conduct themselves, emerges during certain

16 settings, and I can tell the Court, I know Mr. Pitluck is

17 going to agree, certainly Hernandez will agree, that you can

18 tell more about a person when they're sitting in this chair

19 than any other situation in life.

20         A lot of guys whine, complain and criticize their

21 lawyers.  A lot of guys blame their mothers.  A lot of guys

22 become impossible to deal with.  Every so often, once in a

23 blue moon, you run across a man who, despite what he's done,

24 is a man of quality.  Somebody that you can look at and say

25 he's my friend.  Because he plays up to me, it took us a year

1   before we became really close.

2        There's two lawyers in this courtroom who regularly

3   visit the MDC and they've had occasion, Mike Padden and I'm

4   assuming Zach Taylor is still back there, during our downtime

5   at the MDC to interact with Mr. Modile and get to know

6   Mr. Modile in a social setting and they showed up today to say

7   you, Judge, we think highly of him, we respect him.

8        So, Judge, I know that I can't convey that to you in

9   a way that is anything other than what I'm describing now, but

10  I can assure the Court that if you were sitting in my seat and

11  you dealt with this man, that you would be proud to have been

12  associated with him.

13       The last thing I'm going to say is this.

14       Just before the sentence, Judge, I sat here with

15  David Pitluck, the prosecutor who came into this courtroom and

16  I thanked him for being a class act and he sat there and

17  talked about the case and he looked at Mr. Modile and he said,

18  How's it going.  They had a conversation which was a

19  respectful conversation between two men who, despite what

20  Modile's done, are quality human beings.

21       Judge, I hope he never comes back.  I hope he goes

22  back to Nigeria and finds himself a simple life, raises enough

23  money to get his kids down to visit him, to reconnect, and I

24  would ask, Judge, I know that the guidelines are what they

25  are, there's a lot of harm here, I'd ask you to find just a

56

1  little spot and give him a sentence to that gets him home as

2  soon as possible.

3          Thank you.

4          THE COURT:  Thank you, Mr. Gregory.

5          So Mr. Modile has been following along, it's obvious

6  to me, very carefully and following along what's happening

7  today.

8          Mr. Modile, this is your time.  You have the right

9  to make a statement or present any information to mitigate the

10 sentence.  Do you wish to do that?

11         THE DEFENDANT:  No.  I just want to apologize to the

12 Court, to my family, and thank my lawyer.

13         THE COURT:  Okay.  Is there anything else or is that

14 all you'd like to say right now?

15         THE DEFENDANT:  That's it, Your Honor.

16         THE COURT:  All right.  Thank you, Mr. Modile.

17         We have been going quite some time.  I'm going to

18 take about a five minute or so break.  Don't go too far.  I

19 really mean 5, 6, 7 minutes, something along those lines.  I

20 just think it's been almost an hour and a half and we should

21 take a short break.

22         MR. GREGORY:  Thank you, Judge.

23         THE COURT:  We're adjourned briefly.

24         THE CLERK:  Court is in recess.

25         (Recess taken)  (Court resumes.)

57

1          THE COURT:  We're back on the record and everybody

2    is here.

3          Is there any reason why sentence should not be

4    imposed at this time?

5          Mr. Pitluck?

6          MR. PITLUCK:  No, Your Honor.

7          THE COURT:  Mr. Gregory?

8          MR. GREGORY:  No.

9          THE COURT:  I am going to start by explaining the

10   factors I have considered in arriving at Mr. Modile's

11   sentence.

12         I have calculated and considered the applicable

13   advisory guidelines range which is 121 months to 151 months,

14   again, that's 121 to 151 months, of imprisonment with respect

15   to Count One of the Indictment and Counts One and Two of the

16   Information, and a mandatory consecutive 24 months of

17   imprisonment with respect to Count Three of the Indictment.

18         I have also considered the propriety of any

19   departures and determined that none is warranted and I have

20   considered each of the factors set forth in Title 18, United

21   States Code, Section 3553(a).

22         Those factors are as follows.

23         The first factor is the nature and circumstances of

24   the offense and the history and characteristics of the

25   defendant.

58

Second factor:  The need for the sentence imposed, A, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; B, to afford adequate deterrence to criminal conduct; C, to protect the public from further crimes of the defendant; and, D, to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

Third factor:  The kinds of sentences available.

Fourth factor:  The guidelines range.

Fifth factor:  Any pertinent policy statement.

Sixth factor:  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

And the seventh factor:  The need to provide restitution to any victims of the offense.

Under Title 18, United States Code, Section 3553(a), I am required to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2) which I just described.

I have considered each of the factors that I am required to consider in arriving at the sentence that I am going to impose today and I have considered those factors in light of the particular facts of this case.  And, again, this

1    is two cases and four counts of conviction that I will be

2    sentencing on.

3             Each of the four offenses that Mr. Modile pled

4    guilty to is a serious offense:  Conspiracy to commit wire and

5    bank fraud, aggravated identity theft, money laundering and

6    wire fraud.  Defendant acknowledges in his sentencing

7    memorandum that the offenses are serious and I don't think

8    that really can be disputed here.  Taken together, the

9    criminal conduct at issue spanned several years, affected

10   individual and entity victims, and caused substantial losses.

11            There was a lot of discussion about monetary loss

12   but something that Mr. Pitluck said is really quite true and

13   it is reflected throughout the record in this case.  He was

14   talking in terms of the HELOC fraud and the words he used were

15   that it's very jarring for victims.

16            I think that's probably an understatement.  There

17   are real, real impacts, setting aside even a particular dollar

18   figure, to people who are victimized in the way that

19   Mr. Modile's victims were victimized here.

20            Mr. Modile played an important, active role in the

21   criminal conduct and used sophisticated means.  There isn't

22   anything particularly mitigating about the criminal conduct

23   here.  This was not one time isolated conduct.  Far, far from

24   it.  He repeatedly took actions in connection with his various

25   crimes.  The criminal conduct that Mr. Modile engaged in

60

1   cannot be tolerated.

2         The government's recitation in its sentencing letter

3   of why the criminal conduct at issue here is so serious is

4   very well stated.  The four serious offenses for which he is

5   being sentenced today are not even Mr. Modile's only four

6   offenses.  Mr. Modile has a significant criminal history.

7   That history is troubling and includes prior felony

8   convictions including prior federal felony convictions and

9   includes fraud and aggravated identity theft convictions.  His

10  prior convictions date back to 2006.

11        The sentences imposed must serve a deterrence

12  purpose.  Indeed, there is a real need for deterrence here.

13  General deterrence is important, particularly in light of the

14  nature of the crimes here, but specific deterrence is critical

15  here.

16        In his sentencing memorandum and today, Mr. Modile

17  argues that certain of his prior convictions were for conduct

18  that was committed at the same time as he was committing the

19  instant offenses, but as reflected in the PSR, he does have

20  convictions that predate, by far, the time period of the

21  instant offenses and those convictions and sentences evidently

22  did not deter him from committing crimes, committing serious

23  crimes.

24        In addition to serving a deterrence purpose, the

25  sentences imposed today must also promote respect for the law

61

1    and the sentences, importantly, must serve to protect the

2    public from further crimes of the defendant.  There is a real

3    concern based on the record here on that front.

4            Mr. Modile has committed numerous serious crimes

5    across multiple jurisdictions.  Between his current offenses

6    and prior offenses, he has committed crimes from California to

7    New York.  I believe in his memorandum, defendant acknowledges

8    with respect to the instant criminal conduct that he has

9    committed the conduct in several jurisdictions and with

10   multiple co-conspirators.

11           The sentences here must also provide just

12   punishment.  There are numerous reasons in the record before

13   me to impose a very significant term of imprisonment.  There

14   are some mitigating factors reflected in the record before the

15   court as well and both parties have talked about mitigating

16   factors.

17           I know that Mr. Gregory has complimented

18   Mr. Pitluck.  I will say that both parties have done an

19   excellent job of presenting their arguments.  I do note that

20   the government has taken a measured approach in this case and

21   as reflected by Mr. Gregory's comments as well.  So the

22   government has also spoken about mitigation.

23           On the issue of mitigation, I have considered all of

24   the arguments advanced in mitigation and all of the mitigation

25   related information in the record before me, and I have spent

1   a tremendous amount of time with the record here on this case.

2           I have, for example, considered the arguments and

3   information about Mr. Modile's family, and about the time that

4   he has spent in prison, including about the conditions in

5   prison during the pandemic and also that the work that

6   Mr. Modile does in the kitchen for which he has received a

7   positive performance rating.  I have also considered the

8   argument defendant and also today the government has made

9   about disparity and, of course, I have considered that

10  Mr. Modile pled guilty to the four instant offenses taking

11  responsibility in that way for his criminal conduct.

12          I have also considered the arguments that have been

13  raised in the papers but also today about the prior scheduled

14  release dates of Mr. Modile and the effect that those changes

15  of those dates have had on him.  I have considered that

16  information.

17          But again, Mr. Modile engaged in serious criminal

18  conduct, he engaged in that conduct over a significant period

19  of time, he played an important role in the criminal conduct,

20  and the conduct caused significant harm to victims, losses and

21  the kind of harm that comes along with the types of conduct

22  that he committed including what Mr. Pitluck discussed today

23  about the HELOC fraud.  And, again, Mr. Modile's prior

24  convictions and sentences clearly did not deter him from

25  engaging in serious criminal conduct.

1          A sentence below the applicable guidelines range
2    would not be sufficient to serve the purposes of sentencing
3    that must be served here, however, a sentence above the
4    applicable guideline range would be greater than necessary.  A
5    sentence at the low end of the guideline range is appropriate,
6    recognizing that the guidelines range is significant, and also
7    that there is a 24 month mandatory consecutive term of
8    imprisonment that must be imposed on Count Three of the
9    Indictment, and also recognizing that Mr. Modile's prior
10   sentences were significantly shorter than the low end of the
11   currently applicable advisory guidelines range.
12          I will now state the sentences that I intend to
13   impose.  I am going to ask, if he's able to, Mr. Modile, to
14   rise.
15          Starting with the Indictment, 21-CR-108, Mr. Modile,
16   it is the judgment of the court that you are sentenced to the
17   following.
18          On Count One of the Indictment, 21-CR-108, a term of
19   imprisonment of 121 months, to be followed by a term of
20   supervised release of two years.  The term of imprisonment
21   shall run concurrently with the terms of imprisonment to be
22   imposed on Counts One and Two of the Information, 23-CR-50, as
23   I will set forth momentarily.  The term of supervised release
24   shall run concurrently with the terms of supervised release to
25   be imposed on all other counts which I will also set forth

64

1    momentarily.

2        On Count Three of the Indictment, 21-CR-108, you are

3    sentenced to a term of imprisonment of 24 months, to be

4    followed by a term of supervised release of one year.  The

5    term of imprisonment shall run consecutively to the term of

6    imprisonment imposed on Count One of Indictment 21-CR-108, and

7    the terms of imprisonment imposed on Counts One and Two of

8    Information 23-CR-50 which I will set forth momentarily.  The

9    term of supervised release shall run concurrently with the

10   term of supervised release imposed on all other counts.

11       I will describe shortly the conditions of supervised

12   release that you will be subject to and set forth your

13   sentence on Counts One and Two of the Information, but let me

14   continue with respect to the Indictment.

15       In light of the record, the court determines that

16   you are unable to pay a fine and, therefore, no fine is

17   imposed.

18       Restitution is mandatory in this case pursuant to

19   Title 18, United States Code, Section 3663A.

20       Defendant shall pay restitution in the total amount

21   of $1,527,726.76 to the victims who will be referred to on the

22   judgment form as Victim 1, Victim 2 and Company 1.

23   Specifically, defendant shall pay restitution in the amount of

24   $289,450 to Victim 1, $96,276.76 to Victim 2, and $1,142,000

25   to Company 1.

65

1        The restitution amount shall be due immediately and

2   shall be payable at a rate of $25 per quarter while defendant

3   is in custody and at a rate of 10 percent of gross monthly

4   income while defendant is on supervised release.  Restitution

5   payments shall be directed to the Clerk of Court, 225 Cadman

6   Plaza East, Brooklyn, New York 11201.  The interest

7   requirement is waived based on the record which indicates that

8   defendant does not have the ability to pay interest.  The

9   government is ordered to provide the victims' names and

10  addresses to the Clerk of Court.

11       This restitution obligation is joint and several as

12  to any defendant in this case, 21-CR-108, and the defendant in

13  Eastern District of New York case number 19-CR-474.

14       Forfeiture is ordered in the amount of $1,167,375.18

15  as specified in the order of forfeiture dated February 14,

16  2024, ECF number 53, which I make a part of the judgment in

17  this case.

18       You are ordered to pay to the United States a

19  mandatory special assessment of $100 on each of Counts One and

20  Three of Indictment 21-CR-108 for a total of $200 which shall

21  be due immediately.

22       I'm turning now to the Information, 23-CR-50.

23       Mr. Modile, it is the judgment of the court that you

24  are sentenced on each of Counts One and Two of

25  Information 23-CR-50 to the following.

1        A term of imprisonment of 121 months, to be followed

2   by a term of supervised release of two years.  The term of

3   imprisonment on each of Counts One and Two of the Information,

4   23-CR-50, shall run concurrently with each other and with the

5   term of imprisonment imposed on Count One of Indictment

6   21-CR-108.  And the term of supervised release on each of

7   Counts One and Two of Information 23-CR-50 shall run

8   concurrently with the terms of supervised release imposed on

9   all other counts.

10       Again, in a moment or two, I will describe the

11  conditions of supervised release that you will be subject to.

12       In light of the record, the court determines that

13  you are unable to pay a fine and, therefore, no fine is

14  imposed.  Restitution is mandatory in this case and now I'm,

15  of course, talking about the Information case, pursuant to

16  Title 18, United States Code, Section 3663A.

17       Defendant shall pay restitution in the amount of

18  $358,774 to the victims who will be referred to on the

19  judgment form as Victim No. 3, Victim No. 4 and Victim No. 5.

20  Specifically, defendant shall pay restitution in the amount of

21  $78,350 to Victim No. 3; $120,696 to Victim 4; and $159,728 to

22  Victim 5.

23       The restitution amount shall be due immediately and

24  shall be payable at a rate of $25 per quarter while the

25  defendant is in custody and at a rate of 10 percent of gross

1  monthly income while the defendant is on supervised release.

2  Again, restitution payments shall be directed to the Clerk of

3  Court, 225 Cadman Plaza East, Brooklyn, New York 11201.  The

4  interest requirement is waived based on the record which

5  indicates that defendant does not have the ability to pay

6  interest.  Again, the government is directed to provide the

7  victims' names and addresses to the Clerk of Court.

8          You are ordered to pay to the United States a

9  mandatory special assessment of $100 on each of Counts One and

10 Two of Information 23-CR-50 for a total of $200 which shall be

11 due immediately.

12         You may be seated while I set forth the conditions

13 of supervised release that you must comply with and these are

14 with respect to all four counts.

15         The standard conditions of supervised release

16 adopted by the Court shall apply.  If anyone would like me to

17 read them out loud, I will.

18         Mr. Pitluck?

19         MR. PITLUCK:  No.

20         THE COURT:  Mr. Gregory?

21         Mr. Gregory, no?

22         MR. GREGORY:  Yes.  No.

23         THE COURT:  Okay.  You don't want me to.

24         In addition, you will be subject to the following

25 mandatory conditions.  You shall not commit another federal

68

1    state or local crime.  You shall not unlawfully possess a
2    controlled substance.  You shall refrain from any unlawful use
3    of a controlled substance.  You must cooperate in the
4    collection of DNA as directed by the Probation Department.
5    You shall make restitution in accordance with the applicable
6    statutes.

7         Based on the information in the record before me,
8    which indicates a low risk of future substance abuse by the
9    defendant, you are excused from the condition that you shall
10   submit to one drug test within 15 days of release on
11   supervised release and at least two periodic drug tests
12   thereafter.

13        Given the nature and circumstances of your offenses,
14   your immigration status and your history, you will also be
15   subject to and must comply with the following special
16   conditions, and these were the conditions recommended by the
17   Probation Department that I mentioned earlier in brief, but I
18   am going to read them in full now and there are five of them.

19        First special condition:  The defendant shall comply
20   with the restitution orders.

21        Second special condition:  Upon request, the
22   defendant shall provide the U.S. Probation Department with
23   full disclosure of his financial records, including commingled
24   income, expenses, assets and liabilities, to include yearly
25   income tax returns.  With the exception of the financial

69

accounts reported and noted within the presentence report, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Department.  The defendant shall cooperate with the Probation Officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses.  The defendant shall cooperate in the signing of any necessary Authorization to Release Information forms permitting the U.S. Probation Department access to his financial information and records.

Third special condition:  The defendant shall not obtain or possess any form of identification in any name, Social Security number, and/or date of birth other than his true legal name, Social Security number, and date of birth. The defendant shall not use, for any reason or purpose in any manner, any name, Social Security number, and/or date of birth other than his true legal name, Social Security number, and/or date of birth.

Fourth special condition:  If removed, the defendant may not reenter the United States illegally.

And fifth special condition:  The defendant shall cooperate with and abide by all instructions of immigration authorities.

70

1          Does either counsel object to these conditions?

2          Mr. Pitluck?

3          MR. PITLUCK:  No, Your Honor.

4          THE COURT:  Mr. Gregory?

5          MR. GREGORY:  No, Your Honor.

6          THE COURT:  These conditions I do find comply with

7     the requirements of Section 3583(d).

8          Mr. Modile, you should know that violating the terms

9     of your supervised release could lead to your supervised

10    release being revoked.  Under that circumstance, you could be

11    ordered back to prison.

12         I direct that the Probation Department provide the

13    defendant with a written statement that sets forth all the

14    conditions to which the term of supervised release is subject

15    and that is sufficiently clear and specific to serve as a

16    guide for the defendant's conduct and for such supervision as

17    is required.

18         Does either counsel know of any legal reason why the

19    sentences that I have indicated I intend to impose should not

20    be imposed as stated?

21         Mr. Pitluck?

22         MR. PITLUCK:  No, Your Honor.

23         THE COURT:  Mr. Gregory?

24         MR. GREGORY:  No.

25         THE COURT:  I order the sentences that I have

71

1    described to be imposed as stated.  I find that these

2    sentences are sufficient, but not greater than necessary to

3    comply with the sentencing purposes set forth in Title 18,

4    United States Code, Section 3553(a)(2), including the need to

5    reflect the seriousness of the offense, to promote respect for

6    the law, to provide just punishment for the offense, to afford

7    adequate deterrence to criminal conduct, and to protect the

8    public from further crimes of the defendant.

9            Mr. Pitluck, are there any open counts to be

10   addressed?

11           MR. PITLUCK:  Your Honor, Count Two of the

12   Indictment, it remains open at this time.  The government

13   would move to dismiss that count.

14           THE COURT:  Is the motion as against Mr. Modile?

15           MR. PITLUCK:  Thank you, Judge.  Exclusively against

16   Mr. Modile.

17           THE COURT:  And I take it the defense has no

18   objection to that?

19           MR. GREGORY:  Correct.

20           THE COURT:  Count Two of Indictment 21-CR-108 is

21   dismissed as against Defendant Modile on the government's

22   motion.

23           Mr. Modile, I will now tell you about your appeal

24   rights with respect to each of case numbers 21-CR-108 and

25   23-CR-50.

72

1        You can appeal your conviction if you believe that
2  your guilty plea was somehow unlawful or involuntary or if
3  there's some other fundamental defect in the proceedings that
4  was not waived by your guilty plea.

5        Under some circumstances, a defendant also has the
6  right to appeal the sentence imposed.  However, a defendant
7  may waive that right as part of a plea agreement and you have
8  entered into a plea agreement that waives your right to appeal
9  or otherwise challenge your conviction or sentences if I
10 sentence you to a term of imprisonment of 192 months or less,
11 which I have done.  Such waivers are generally enforceable but
12 if you believe that the waiver itself is not valid, you can
13 present that theory to the appellate court.

14        Any notice of appeal must be filed within 14 days of
15 the entry of judgment or within 14 days of the filing of a
16 notice of appeal by the government.  If you request, the Clerk
17 of Court will prepare and file a notice of appeal on your
18 behalf.  If you cannot afford to pay the cost of an appeal,
19 you have the right to apply for leave to appeal *in forma*
20 *pauperis*, which means you can apply to have the court waive
21 the filing fee.  If you cannot afford to pay for appellate
22 counsel, you may also apply for court-appointed counsel.

23        The PSR will be made part of the record in each of
24 case numbers 21-CR-108 and 23-CR-50 and placed under seal.  If
25 an appeal is taken, counsel on appeal may have access to the

73

1    sealed report without further application to this court.

2              In addition, I direct that a transcript of today's

3    sentencing be made part of the court record for purposes of an

4    appeal.

5              Are there any other matters to resolve in this case,

6    Mr. Pitluck?

7              MR. PITLUCK:  Nothing from the government.  Thank

8    you, Judge.

9              MR. GREGORY:  Judge, the only thing is a

10   recommendation, if you would, to Fort Dix.

11             THE COURT:  I won't make a recommendation to a

12   specific facility but I will take up a request for a

13   geographic recommendation if you have one.

14             MR. GREGORY:  Northeast.  New York.

15             THE COURT:  Why don't you decide exactly,

16   specifically what you want to ask for because I am inclined to

17   recommend.  Northeast is very different than New York so what

18   would you like?

19             Do you want to take a minute?

20             (Pause.)

21             MR. GREGORY:  New Jersey, Judge.  That's where

22   Fort Dix is.  That's where he wants to go.

23             THE COURT:  Okay, but I'm not going to recommend a

24   particular facility.

25             MR. GREGORY:  No.  You said that, Judge.  What I'm

74

1   asking you to recommend is the state of New Jersey, a federal

2   facility in the state of New Jersey and, hopefully, he'll end

3   up at Fort Dix.

4           THE COURT:  Does the government have any --

5           MR. PITLUCK:  Judge, we usually leave that to the

6   discretion of the Court and the Bureau of Prisons court and

7   the Bureau of Prisons.

8           THE COURT:  Well, I'm not going to make a

9   recommendation that's designed for you to try to get to a

10  particular facility.

11          If he has a reason, for instance, if there's family

12  visits that would be easier for him to facilitate in a

13  particular geographic region but --

14          MR. GREGORY:  Judge, family.  I think he has family

15  in the Tri-State area.  So if you want to do New York or New

16  Jersey, that's fine too.

17          THE COURT:  Okay.  How about -- I'm just trying to

18  think what's the most effective way to make this

19  recommendation because to say a facility as close to New York

20  or New Jersey as possible, I can do that.

21          MR. GREGORY:  Yes, that's fine, Judge.

22          THE COURT:  Okay.  But, again, New York is a big

23  state.

24          MR. GREGORY:  I don't know what the federal

25  facilities are in New York State.  If the Court won't

1  recommend Fort Dix, I really don't know how else to, you know,

2  to accomplish what we want to do which is get him to Fort Dix.

3           MR. PITLUCK:  Judge, if I may, what I usually hear

4  is for people who are looking for this geographic requirement,

5  the New York Metropolitan area and its surroundings, and that

6  usually encompasses Long Island, New Jersey and New York City.

7           THE COURT:  I've done New York Metropolitan area

8  which I don't think we need "surroundings."

9           Is that something, a recommendation you want, a

10 facility as close as possible to the New York Metropolitan

11 area?

12          MR. GREGORY:  Fine.

13          THE COURT:  Okay.  I will make that recommendation

14 that he be designated to a facility as close as possible to

15 the New York Metropolitan area to facilitate family visits.

16          MR. GREGORY:  Fine, Judge.

17          THE COURT:  And, again, it's just a recommendation.

18 I cannot direct the Bureau of Prisons to make any designation

19 but I will recommend that.

20          Other than that request, is there anything else that

21 you want to raise, Mr. Gregory?

22          MR. GREGORY:  No.

23          THE COURT:  And, of course, the defendant remains

24 remanded.

25          Mr. Pitluck, anything?

76

1        MR. PITLUCK:  No.  Thank you, Judge.

2        THE COURT:  Okay.  I think we've reached the end of

3   the proceeding and I thank the parties for their advocacy here

4   and I will note that I think it's in everybody's interest

5   always when the parties can interact with each other

6   respectfully, professionally, civilly, and that's certainly

7   been the case here.

8        I know that this is probably a difficult day for

9   Mr. Modile and I don't want to detract from that by commenting

10  on counsel's performance, but I do have to note that I think

11  it's in the interest of everybody including Mr. Modile that

12  the prosecution and the defense were interacting with each

13  other so well.

14       I wish Mr. Modile the best of luck and we are

15  adjourned for today.

16       Thank you.

17       THE CLERK:  All rise.

18       (Matter concluded.)

19

20                  *      *      *      *      *

21

22  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

23

24   /s/ Charleane M. Heading              August 14, 2024

25   _____      _____
        CHARLEANE M. HEADING                    DATE